**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LESTER JOHNSON,                              )
                                             )       Civil Action No. 17 – 1559
                    Petitioner,              )
                                             )
           v.                                )       District Judge Robert J. Colville
                                             )       Magistrate Judge Lisa Pupo Lenihan
SUPT. DELBASO and THE                        )
ATTORNEY GENERAL OF THE                      )
STATE OF PENNSYLVANIA,                       )
                                             )
                    Respondents.             )
                                             )


## REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Amended Petition for Writ of Habeas Corpus (ECF No. 25) be denied and that a certificate of appealability also be denied.

### II.   REPORT

Pending before the Court is an Amended Petition for Writ of Habeas Corpus ("Amended Petition") filed by Petitioner Lester Johnson ("Petitioner") pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  (ECF No. 25.)  Petitioner challenges his judgment of sentence out of Allegheny County, Pennsylvania, after he was convicted by a jury of two counts each of first-degree murder, kidnapping, unlawful

restraint, and criminal conspiracy.[1]  For the reasons set forth herein, it is recommended that the

Amended Petition be denied and that a certificate of appealability also be denied.

A.  **Factual and Procedural History**

The underlying factual history of this case was set forth on direct appeal by the

Pennsylvania Superior Court in its Memorandum dated April 17, 2012.

> At approximately 8 p.m. on July 25, 2004, eyewitnesses near the corner of Lincoln and Lemington Avenues in the Lincoln/Lemington section of Pittsburgh, Pennsylvania observed [Petitioner] and Jaurvon Hopkins hold victims James Jones and Shawnte Betts at gunpoint.  Hopkins forced Betts into a White Toyota Camry.  When Jones refused to get into the vehicle, [Petitioner] shot Jones in the leg.  In an attempt to flee, Jones slipped out of his shirt and began to run down the street.  [Petitioner] then fired three or four more times in the direction of Jones' back.  After Jones fell to the ground, [Petitioner] grabbed Jones and stuffed him in the backseat of the vehicle with Betts.  The vehicle then drove off down Lincoln Avenue, towards Penn Hills.  Several eyewitnesses positively identified [Petitioner] as the individual who shoved Jones in the backseat of the Camry and Jaurvon Hopkins as the driver of the vehicle.

> The following evening, police discovered Jones' body in the backseat of the abandoned Camry parked in an alley in Wilkinsburg, Pennsylvania.  On July 30, 2004, Betts' body was discovered a quarter of a mile away from the location of the Camry near North Avenue in Wilkinsburg.  Autopsies revealed that both victims died as a result of fatal gunshot wounds.  Jones sustained several gunshot wounds to his back and extremities, while Betts suffered a single gunshot wound to the head at point blank range.

> Based on eyewitness identification, [Petitioner] was arrested for the murder of Jones and Betts.  [Petitioner] was charged at several docket numbers with two counts each of criminal homicide, kidnapping, unlawful restraint, and criminal conspiracy.  The Commonwealth gave notice of its intent to seek the death penalty.  Following a jury trial, [Petitioner] was convicted of two counts of

---

[1] These convictions stemmed from charges brought at four separate criminal cases.  At CP-02-CR-11740-2004, Petitioner was charged with the criminal homicide of Shawnte Betts.  At CP-02-CR-12721-2004, Petitioner was charged with kidnapping, unlawful restraint, and criminal conspiracy as to victim Shawnte Betts.  At CP-02-CR-14023-2004, Petitioner was charged with the criminal homicide of James Jones.  At CP-02-CR-12723-2004, Petitioner was charged with kidnapping, unlawful restraint, and criminal conspiracy as to victim James Jones.  All four cases were consolidated for trial before the Honorable Kevin G. Sasinoski.

first-degree murder and all remaining charges.  FN1.  After the jury was unable to render a unanimous verdict as to the sentence to be imposed, the trial court sentenced [Petitioner] to two consecutive terms [of] life imprisonment for the first-degree murder convictions, to be followed by an aggregate term of 35 to 70 years' imprisonment on the remaining convictions.  [Petitioner] thereafter filed post-sentence motions, which the trial court denied.

> FN1    Co-defendant Jaurvon Hopkins was tried separately and convicted by a jury on November 17, 2009.

(Resp't Exh. 23; ECF No. 26-6, pp.26-28.)  The Superior Court affirmed Petitioner's judgment of sentence on April 17, 2012 (Resp't Exh. 23; ECF No. 26-6, pp.26-36), and the Pennsylvania Supreme Court denied his petition for allowance of appeal on August 22, 2012 (Resp't Exh. 26; ECF No. 26-8, p.5).

On September 24, 2012, Petitioner filed a *pro se* petition for post-conviction relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA").  (Resp't Exh. 27; ECF No. 26-8, pp.6-8.)  An amended PCRA petition was filed on his behalf by Attorney Scott Coffey on May 30, 2013.  (Resp't Exh. 28; ECF No. 26-9.)  A second amended PCRA petition was filed by Attorney Coffey on August 19, 2013, wherein Petitioner withdrew four claims, modified one and further clarified four others.  (Resp't Exh. 29; ECF No. 26-10, pp.1-16.)  In its Answer, the Commonwealth agreed that Petitioner could be granted relief as to his first claim regarding an illegal sentence and also requested dismissal of certain claims without a hearing and to address the remaining claims at a hearing.  (Resp't Exh. 30; ECF No. 26-10, pp.17-47.)

On September 10, 2013, the first of two PCRA hearings was held before Judge Sasinoski. There was oral argument as to how the sentencing orders needed to be amended, and the court orally vacated the unlawful restraint sentences at CP-02-CR-12721-2004 and CP-02-CR-12723-2004.  (PCRA-1, pp.1-8.)  Testimony was presented and Attorney Coffey requested the matter be continued so that he could further consult with his client.  (PCRA-1, p.32.)  Judge Sasinoski

granted the continuance and the hearing resumed on October 8, 2013.  Testimony was presented

and the hearing concluded with the PCRA court providing Attorney Coffey the opportunity to

locate and speak with witnesses Dale Jones and Ernest Toliver.  (PCRA-2, pp.3-39.)  Attorney

Coffey later explained, "A third PCRA hearing had been scheduled for 11/6/13 for the possible

presentation of testimony from witnesses Ernest Toliver and Dale Jones, but was cancelled

because witnesses Ernest Toliver and Dale Jones never responded to Undersigned Counsel's

letters and telephone calls."  (Resp't Exh. 34; ECF No. 26-11, p.13.)

On November 6, 2013, Judge Sasinoski issued an order granting the PCRA petition in

part by officially vacating the unlawful restraint sentences at CP-02-CR-12721-2014 and CP-02-

CR-12723-2014 and dismissing the remaining claims as meritless.  (Resp't Exh. 31; ECF No.

26-10, p.48.)  Petitioner filed a notice of appeal.  (Resp't Exh. 32; ECF No. 26-10, pp.49-53.)

On December 30, 2013, Attorney Coffey filed, on behalf of Petitioner, a Concise

Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b).  (Resp't Ex. 34;

ECF No. 26-11, pp.8-17.)  On September 18, 2014, Petitioner filed in the Superior Court an

Application for Leave to Proceed *pro se*.  (Resp't Exh. 35; ECF No. 26-11, pp.18-19.)  On

September 19, 2014, the Superior Court issued an order directing the lower court to conduct a

colloquy of Petitioner pursuant to Commonwealth v. Grazier, 713 A.2d 81 (Pa. 1998), in order to

determine whether he satisfied the standard to proceed *pro se*.  (Resp't Exh. 36; ECF No. 26-11,

pp.20-21.)  On October 9, 2014, the lower court, after conducting a Grazier hearing, issued an

order permitting Petitioner to proceed *pro se* and Attorney Coffey to withdraw.  The court also

granted Petitioner additional time to file a *pro se* Concise Statement of Matters Complained of

on Appeal.  (Resp't Exh. 37; ECF No. 26-11, p.22.)  Petitioner filed his *pro se* Concise

Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b) on January 23,

4

2015.  (Resp't Exh. 40; ECF No. 26-11, pp.29-32.)  Judge Sasinoski filed his Pa. R.A.P. 1925(a)

Opinion on February 17, 2015.  (Resp't Exh. 41; ECF No. 26-11, pp.33-41.)  On May 6, 2016,

the Superior Court affirmed the PCRA court's dismissal of PCRA relief.  (Resp't Exh. 44; ECF

No. 26-14, pp.1-13.)  The Pennsylvania Supreme Court denied Petitioner's petition for allowance

of appeal on December 7, 2016.  (Resp't Exh. 47; ECF No. 26-14, p.65.)

Petitioner filed his first Petition in this case on November 20, 2017,[2] and it was docketed

after he paid the filing fee on January 24, 2018.  (ECF Nos. 1, 6.)  He filed the Amended Petition

on July 30, 2018.  (ECF No. 25.)  Respondents' filed their Answer to the Amended Petition on

August 13, 2018, and a Supplement thereto on August 14, 2018.  (ECF Nos. 26, 27.)  Petitioner

filed a Reply brief on November 30, 2018.  (ECF No. 36.)

### B.  **Petitioner's Claims**

Petitioner raises six claims in his Amended Petition.  They are as follows:  (1) ineffective

assistance of direct appeal counsel for failing to challenge the trial court's denial of his pretrial

motion to suppress the photographic identifications of eyewitnesses Donna Peoples and Samuel

Walter and for failing to challenge the in-court identifications of both witnesses at trial; (2) a

violation of Brady v. Maryland, 373 U.S. 83 (1963), by the Commonwealth for withholding

exculpatory evidence in the form of an investigative report prepared by the Drug Enforcement

Agency ("DEA"); (3) ineffective assistance of trial counsel for failing to move for the recusal of

Judge Sasinoski; (4) ineffective assistance of trial counsel for failing to subpoena witness Dale

Jones; (5) ineffective assistance of trial counsel for failing to subpoena witness Ernest Toliver;

---

[2] This is the filing date pursuant to the prisoner mailbox rule.  *See* Houston v. Lack, 487 U.S. 266 (1988).

and (6) ineffective assistance of trial counsel for failing to object to the reading of Charles

Scott's preliminary hearing testimony into the record at trial.

### C.  **Standard of Review**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

federal habeas court may overturn a state court's resolution of the merits of a constitutional issue

only if the state court decision was "contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States."  28

U.S.C. § 2254(d)(1).  The phrase "clearly established Federal law," as the term is used in Section

2254(d)(1) is restricted "to the holdings, as opposed to the dicta of [the United States Supreme

Court] decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529

U.S. 362, 365 (2000).

The Supreme Court has identified two scenarios where a state court decision will fall into

section 2254(d)(1)'s "contrary to" clause.  First, a state court decision will be "contrary to"

clearly established federal law when the court "applies a rule that contradicts the governing law

set forth in [Supreme Court] cases."  Williams v. Taylor, 529 U.S. 362, 405 (2000).  It set forth

the following example where a state court decision would be "contrary to" Strickland v.

Washington, 466 U.S. 668 (1984), the familiar clearly established federal law governing

ineffective assistance of counsel claims.

> If a state court were to reject a prisoner's claim of ineffective assistance of
> counsel on the grounds that the prisoner had not established by a preponderance
> of the evidence that the result of his criminal proceeding would have been
> different, that decision would be 'diametrically different,' 'opposite in character
> or nature,' and 'mutually opposed' to our clearly established precedent because
> we held in Strickland that the prisoner need only demonstrate a 'reasonable
> probability that . . . the result of the proceeding would have been different.'

Williams, 529 U.S. at 405-06 (internal citations omitted).  The Supreme Court said that a state court decision will also be "contrary to" clearly established federal law if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."  Id. at 406.

The Supreme Court has said that under the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1), a state court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407.  Under this standard, "a federal habeas court may not grant relief simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  The Supreme Court later expanded on this interpretation of the "unreasonable application" clause explaining that the state court's decision must be "objectively unreasonable," not merely wrong; even "clear error" will not suffice. Locklyer v. Andrade, 538 U.S. 63, 75 (2003).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

If a petitioner is able to satisfy the requirements of § 2254(d)(1), then the state court decision is not entitled to deference under AEDPA and the federal habeas court proceeds to a *de novo* evaluation of the constitutional claim on the merits.  *See* Tucker v. Superintendent Graterford SCI, 677 F. App'x 768, 776 (3d Cir. 2017) (citing Panetti v. Quarterman, 551 U.S.

930, 953 (2007) ("When . . . the requirement set forth in § 2254(d)(1) is satisfied[,] [a] federal

court must then resolve the claim without the deference AEDPA otherwise requires.").  Indeed,

the Third Circuit recently explained that,

> [w]hile a determination that a state court's analysis is contrary to or an
> unreasonable application of clearly established federal law is necessary to grant
> habeas relief, it is not alone sufficient.  That is because, despite applying an
> improper analysis, the state court still may have reached the correct result, and a
> federal court can only grant the Great Writ if it is "firmly convinced that a federal
> constitutional right has been violated," Williams, 529 U.S. at 389, 120 S.Ct. 1495.
> *See also* Horn v. Banks, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301
> (2002) ("[w]hile it is of course a necessary prerequisite to federal habeas relief
> that a prisoner satisfy the AEDPA standard of review . . . none of our post-
> AEDPA cases have suggested that a writ of habeas corpus should automatically
> issue if a prisoner satisfies the AEDPA standard").  Thus, when a federal court
> reviewing a habeas petition concludes that the state court analyzed the petitioner's
> claim in a manner that contravenes clearly established federal law, it then must
> proceed to review the merits of the claim *de novo* to evaluate if a constitutional
> violation occurred.  *See* Lafler v. Cooper, 566 U.S. 156, 174, 132 S.Ct. 1376, 182
> L.Ed.2d 398 (2012).

Vickers v. Superintendent Graterford SCI, 858 F.3d 841, 848-89 (3d Cir. 2017) (internal footnote

omitted).

The AEDPA further provides for relief if an adjudication "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(2).  Under § 2254(d)(2), a state court decision is

based on an "unreasonable determination of the facts" if the state court's factual findings are

"objectively unreasonable in light of the evidence presented in the state-court proceeding,"

which requires review of whether there was sufficient evidence to support the state court's

factual findings.  *See* Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Within this overarching

standard, a petitioner may attack specific factual determinations that were made by the state

court, and that are subsidiary to the ultimate decision.  Here, § 2254(e)(1) comes into play,

instructing that the state court's determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence.  Lambert v. Blackwell, 387 F.3d 210, 235 (3d Cir. 2004).

### D.  Discussion

    1.  **Claim one:  Ineffective assistance of direct appeal counsel for failing to challenge the trial court's denial of Petitioner's pretrial motion to suppress the photographic and in-court identifications made by Peoples and Walter.**

    In claim one, Petitioner argues that his direct appeal counsel was ineffective for failing to challenge the trial court's denial of his pretrial motion to suppress the photographic identifications of eyewitnesses Donna Peoples and Samuel Walter and was also ineffective for failing to challenge the in-court identifications of both witnesses at trial.[3]  Petitioner raised a version of this claim in his PCRA petition.  Specifically, he claimed that direct appeal counsel was ineffective for failing to challenge the trial court's denial of his pretrial motion to suppress the identification evidence and argued that the photo array that was shown to Donna Peoples and Samuel Walter was unduly suggestive because he was the only "light-skinned black male" on the array.  See (Resp't Exh. 40; ECF No. 26-11, p.29.)  In its 1925(a) Opinion, the PCRA court stated that the trial court "did not find the pretrial identification procedure to be unduly suggestive[] and did not preclude the in-court identification of eyewitnesses Peoples and Walter. Both witnesses had an opportunity to observe the defendant and were able to independently make an in-court identification.  The reliability of the eyewitnesses' identification was subjected

---

[3] Notably, Petitioner's direct appeal counsel, Attorney Matthew Debbis, did include in his concise statement of matters complained of on appeal a claim challenging the trial court's denial of Petitioner's pretrial motion to suppress the identification testimony and in court identifications of both Donna Peoples and Samuel Walter.  See (Resp't Exh. 19; ECF No. 26-3, p.46.) However, he ultimately chose not to pursue the claim and did not include it in his appellate brief. See (Resp't Exh. 21; ECF No. 26-4, p.23.)

to cross-examination and the court did not err in refusing to suppress their identification of the

defendant.  Appellate counsel did not err in failing to raise this issue."  (Resp't Exh. 41; ECF No.

26-11, p.36.)  On appeal, the Superior Court noted that in order to obtain relief on a claim of

ineffective assistance of counsel, Petitioner had to show "that there is merit to the underlying

claim; that counsel had no reasonable basis for his course of conduct; and finally, that there is a

reasonable probability that but for the act or omission in question, the outcome of the proceeding

would have been different."  (Resp't Exh. 44; ECF No. 26-14, p.4) (citing Commonwealth v.

Fletcher, 750 A.2d 261, 273-74 (Pa. 2000) and Commonwealth v. Pierce, 527 A.2d 973, 974 (Pa.

1987)).  It ultimately agreed that appellate counsel was not ineffective and explained its

reasoning as follows:

> Peoples testified she was driving along Lincoln Avenue and stopped at a traffic
> light at the intersection of Lincoln Avenue and Lemington Avenue.  She looked
> out her driver's-side window and saw a shirtless man lean on a pole near the
> corner, then slide down the pole and fall over.  The man's shirt was wrapped
> around his hands, and he was bleeding.  When the light turned green, she went
> through the intersection and pulled over to the curb.  She called 9-1-1 and then got
> out of her car and walked toward the injured man.  At this point, she saw a white
> four-door Toyota traveling down Lemington Avenue, stopping at the intersection.
> A slender, light-skinned African American male got out of the car and approached
> the man.  At first she thought the man's friends were helping him, and would take
> him to the hospital; she even told 9-1-1 that assistance was no longer needed.
> Peoples was close enough to see the man strike the victim in the face and take
> something from his pockets; she realized that the men were not there to help, and
> saw them stuffing him in the back of the Toyota.  N.T. Trial, 4/20/09, at 205-10.
> Peoples screamed for them to stop, but the car pulled away.  Peoples was close
> enough to get the license plate number.  Id. at 214, 216.
>
> Later, when police arrived, Peoples was taken to the police station for an
> interview.  The next day, Peoples was shown a photo array and immediately
> selected a picture of Johnson as the man she had seen trying to put the injured
> man into the Toyota.  She stated that her identification was a "9" on a scale of 1 to
> 10.  Id. at 220-22, 273, 241, 1187, 1194, 1203.  Peoples also made a subsequent
> in-court identification of Johnson.  Id. at 213-14, 238.

Another eyewitness, Samuel Walter, a paramedic, was driving an ambulance, and as he approached the intersection of Lincoln and Lemington, he saw the victim lying on the corner with his feet out in the street.  Id. at 296-97.  Walter also saw the white Toyota pull up and, through his driver's side mirror, observed Johnson and another black male loading the victim into the car.  Id. at 318-20, 333, 374.

The next night, the victim was found, shirtless and with his pants and boxer shorts pulled down past his buttocks, in the backseat of the Toyota Camry.  He had suffered three gunshot wounds, one in the left side of his back, which cut his left renal artery and vein, one through the back of his left forearm, and one in his left leg.  The Allegheny County Medical Examiner concluded that the victim had died as a result of these gunshot wounds.  Id. at 62-72.

A few days later, Sawnte Betts, the daughter of the woman in whose name the Toyota was registered, was also found dead about one-quarter mile from where Jones' body was found in the Toyota.  Betts was killed by one gunshot wound to the forehead.  Betts' mother stated that the two victims had been in a relationship for about six months.  Id. at 558-60, 564, 568, 570-71.

On December 30, 2013, Scott Coffey, Esquire, filed a Rule 1925(b) Statement on behalf of Johnson, raising thirteen errors, the last of which was whether direct appeal counsel, Matthew Debbis, Esquire, was ineffective for not challenging the trial court's order denying suppression of Peoples' and Walter's pretrial identification.  After Johnson was granted leave to proceed *pro se*, Attorney Coffey was permitted to withdraw and the court granted Johnson's oral request to file an amended Rule 1925(b) statement.  Johnson filed his *pro se* Rule 1925(b) statement and presented the issue of direct appeal counsel's ineffectiveness for not challenging the denial of his request to suppress the pretrial identification as his first claim of error.  *See Pro Se* Concise Statement of Errors, 1/23/15.  In its Rule 1925(a) opinion, the court stated the pretrial procedure was not suggestive, that both witnesses had an opportunity to observe Johnson and were able to make independent in-court identifications, and the reliability of the eyewitnesses' identifications was subjected to cross-examination.  *See* PCRA Court Opinion, 2/17/2015, at 4.

In order to establish that counsel was ineffective for not challenging the court's order denying his motion to suppress the photographic identifications made by Peoples and Walter, Johnson must show that the totality of the circumstances indicate that the identifications were unreliable.  Commonwealth v. Baker, 614 A.2d 663, 668 (Pa. 1993).  Specific factors to be taken into account include, *inter alia*, the witness' ability "to observe the criminal act; the accuracy of photo array selection and other descriptions; the lapse of time between the act and any line-up; and any failure to identify the defendant on prior occasions."  Id.  In other

words, the issue here, where Johnson claims the array was unduly suggestive because he was the only light-complexioned Black male in the photo-array, is whether the challenged identification has "sufficient indicia of reliability" to warrant its admission even though the procedure was allegedly suggestive. Commonwealth v. Thompkins, 457 A.2d 925 (Pa. Super. 1983).

"A photographic identification is unduly suggestive when the procedure creates a substantial likelihood of misidentification." Commonwealth v. Fisher, 769 A.2d 1116, 1126 (Pa. 2001). "Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics." Id. Here, the photo array included pictures of eight Black males, all of whom had similar features, hair (short cropped) and facial hair (thin mustache and slight beard). Peoples described Johnson to police at the scene as a "light-skinned" Black male, and of the group, one male is the lightest complexioned. Arguably, Johnson's photograph, in that respect, stands out more than the others.

When an out-of-court identification is alleged to be tainted, an in-court identification may still stand if, considering the totality of the circumstances, the identification "had an origin sufficiently distinguishable to be purged of the primary taint." Commonwealth v. Abdul-Salaam, 678 A.2d 342 (Pa. 1996); *see also* Commonwealth v. James, 486 A.2d 376 (Pa. 1985). The factors a court should consider in determining whether there was an independent basis for the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness during the confrontation; and (5) the length of time between the crime and the confrontation. Id. at 380.

Here, both Peoples and Walter directly observed Johnson loading the victim into the back seat of the Toyota. In light of the unusual situation, both eyewitnesses were directly focused on the scene. Peoples identified Johnson the day after the crime, and Walter identified Johnson, as well as Johnson's co-conspirator, two days after the crime. Walter testified that while he initially recognized the actors in both arrays, he did not tell the detectives right away because he was frightened about getting involved and did not want to be a witness. N.T. Trial, 4/20/09, at 315-17, 321, 328, 376. Both witnesses testified that they had a clear view of Johnson as he was trying to force the victim into the car, in the daylight, and both were able to identify Johnson in court. Id. at 95-101, 212-224. Further, both Peoples and Walter were extensively cross-examined with respect to their identifications, id. at 101-20, 227-54, and the jury was free to credit Peoples' and Walker's in-court identifications. FN5. Based on the totality of the circumstances, we conclude that there was sufficient indicia of reliability and a

basis independent from the pre-trial photo array that would support admission of Peoples' and Walter's in-court identification.  Therefore, we cannot conclude that Johnson was prejudiced by counsel's failure to raise this issue on direct appeal.  Pierce, *supra*; *see also* Commonwealth v. Albrecht, 720 A.2d 693, 701 (Pa. 1998) (when it is clear petitioner's ineffective assistance claim has failed to meet prejudice prong of ineffectiveness test, claim may be dismissed on that basis alone).

> FN5    We note that two other eyewitnesses also testified.  Dorian Perry and Tavon Howze, who lived in the neighborhood where the crime occurred, also identified Johnson as the man who put the victim in the car.  Charles Scott, who knew Johnson from the neighborhood, saw Johnson and the victim a short time before the victim's collapse.  Scott testified that Johnson was ordering the victim to get into the car, the victim refused, and Johnson shot him in the leg.  N.T. Trial, *supra* at 268.  The victim attempted to get away, limping down the street, and Johnson fired three or four more times in the direction of the victim's back.  Id. at 269, 285.  Scott saw the victim collapse; he also saw the ambulance, driven by Walters, pull over.  Id. at 271, 287.  He then saw Johnson pick the victim up, look up at him (Scott), and then put the victim in the car.  Id. at 273.

(Resp't Exh. 44; ECF No. 26-14, pp.4-10.)

To begin, Petitioner's claim is one of ineffective assistance, which is governed by the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different.  Id. at 687.  For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Id. at 688.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  With respect to the sequence of the two

prongs, the Strickland Court held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. at 697.  For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court."  Williams v. Taylor, 529 U.S. 362, 391 (2000).

As noted in the Standard of Review section of this Report, in order to obtain relief Petitioner must first show that the Superior Court's adjudication of this claim was "contrary to" or involved an "unreasonable application of" Strickland.  See 28 U.S.C. § 2254(d)(1).  He can also show that its adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d)(2).

Here, the Superior Court analyzed Petitioner's claim under the test for ineffective assistance of counsel claims set forth by the Pennsylvania Supreme Court in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987).  See, supra.  Pierce provides that counsel is presumed to have provided effective representation unless the petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) the petitioner was prejudiced by counsel's action or omission.  Id. at 975-76.  The Third Circuit has held that the Pierce standard is not "contrary to" Strickland, the standard enunciated by the United States Supreme Court in judging ineffectiveness claims.  See Wertz v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).  Given that the state court applied a standard that is not "contrary to" Strickland, the Superior Court's adjudication of this claim satisfies review under the "contrary

14

to" clause of § 2254(d)(1), and the inquiry now becomes whether its decision was an objectively unreasonable application of that law.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult because the standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," 466 U.S. at 689; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). Indeed, the <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 123 ("And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."). Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable, but rather whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard. <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011).

Under the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, Petitioner's ineffective assistance of direct appeal counsel claim does not merit habeas relief. Simply put, for all the reasons identified by the Superior Court, the totality of the circumstances surrounding the identifications by both Peoples and Walter indicate a sufficient indicia of reliability to support their admission in court apart from their identification of Petitioner in the photo array. As such, it was not unreasonable for the Superior Court to conclude that Petitioner was not prejudiced by direct appeal counsel's failure to raise this challenge on direct appeal. The Superior Court's adjudication of this claim thus satisfies review under the "unreasonable application" clause of § 2254(d)(1), and, to the extent Petitioner also

15

argues in favor of relief under § 2254(d)(2), the Superior Court's decision was not an unreasonable determination of the facts in light of the evidence presented.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 2.  Claim two:  Brady violation

In claim two, Petitioner argues that the Commonwealth committed a Brady[4] violation by withholding exculpatory evidence in the form of a DEA investigative report.  Petitioner raised this claim in his PCRA petition, alleging that the victim, James Jones, was an informant for the DEA at the time of his death and that the report implicated others in the victim's murder. Petitioner alleged that the report "reveals that Sneed, Black Mark and N.O. may have kidnapped and murdered Jones because he was a snitch," but in its Rule 1925(a) opinion, the PCRA court noted that paragraphs 59 through 63 of the purported DEA report, which was incomplete and had not been authenticated, outlined in detail the kidnapping and murder of James Jones and Shawnte Betts and specifically named "Defendant, Lester Johnson, and co-defendant, Jaurvon Hopkins as the assailants."  (Resp't Exh. 41; ECF No. 26-11, p.39.)  The PCRA court further noted that the report stated, "At this time, there does not appear to be any relationship between Johnson and Hopkins and the instant investigation."  Id.  It thus concluded that there was no Brady violation because the evidence was "not exculpatory in the least" and because Petitioner did not show "that the Commonwealth had actual knowledge of the existence or possession of this 'report' at the time of defendant's trial."  Id. at pp.39-41.

On appeal, the Superior Court noted that in order to establish a Brady violation, Petitioner had to prove: (1) the evidence at issue was favorable to him, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or

---

[4] Brady v. Maryland, 373 U.S. 83 (1963)

inadvertently; and (3) prejudice ensued.  (Resp't Exh. 44; ECF No. 26-14, p.10) (citing Commonwealth v. Hutchinson, 25 A.3d 277, 310 (Pa. 2011).  Citing to the PCRA court's 1925(a) opinion, and specifically the fact that the report was "not exculpatory in the least" given the fact that it implicated Petitioner and his co-defendant as the people responsible for kidnapping and shooting Jones, the court found that Petitioner's claim did not merit relief.  Id.

In order to obtain relief on this Brady violation claim Petitioner must either show that the Superior Court's adjudication of this claim was "contrary to" or involved an "unreasonable application of" Brady, see 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" see 28 U.S.C. § 2254(d)(2).

As noted by the Superior Court, the United States Supreme Court held in Brady that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  The Supreme Court has stated that there are three components to a true Brady violation:  (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  Indeed, Brady "envisions two requirements for overturning a verdict:  (1) that evidence in possession of the government was actually suppressed, and (2) that the suppressed evidence was material."  Slutzker v. Johnson, 393 F.3d 373, 386 (3d Cir. 2004).  In United States v. Bagley, 473 U.S. 667, 682 (1985), the United States Supreme Court explained that evidence is "material" within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the

17

proceeding would have been different.  In <u>Kyles v. Whitley</u>, 514 U.S. 419, 432 (1995), the

Supreme Court explained:

> [The] touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important.  The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."  <u>Bagley</u>, 473 U.S. at 678[.]

<u>Kyles</u>, 514 U.S. at 434 (additional internal citations omitted).

Petitioner argues that the DEA report was exculpatory because it implicated others in the

victim's murder.  In rejecting Petitioner's claim, the PCRA court found that Petitioner did not

suffer prejudice essentially because the purported DEA report was not material favorable

evidence given that it actually implicated Petitioner and his co-defendant in the victim's murder,

and the Superior Court agreed.  In short, the Superior Court applied the correct legal standard in

evaluating Petitioner's <u>Brady</u> claim and therefore its adjudication satisfies review under the

"contrary to" clause of § 2254(d)(1).  The adjudication also satisfies the "unreasonable

application" clause of § 2254(d)(1) and the "unreasonable determination" clause of § 2254(d)(2).

Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 3.   Claim three:  Ineffective assistance of trial counsel for failing to move to recuse Judge Sasinoski.

In Petitioner's third claim, he argues that trial counsel, Attorney Wendy Williams, was

ineffective for failing to move for the recusal of Judge Sasinoski.  Petitioner raised this claim in

his PCRA petition, and in it he argued that Judge Sasinoski "showed high favor towards victim

James Jones in a hearing . . . only one month prior to his death[,] by removing him from house

arrest . . . so Jones [could] work effectively as an informant for the D.E.A."  (Resp't Exh. 28;

ECF No. 26-9, p.35.)  He alleged that Judge Sasinoski's "prior history with victim Jones"
demonstrated "leniency and favoritism" to Jones, and therefore one could infer Judge Sasinoski
harbored "ill-will" towards Petitioner who was charged with Jones' murder.  Id. at pp.35-36.  In
its 1925(a) opinion, the PCRA court found that Petitioner failed to show how he was prejudiced
by trial counsel's failure to move for recusal since he failed to set forth any specific evidence of
bias or prejudice by Judge Sasinoski.  (Resp't Exh. 41; ECF No. 26-11, pp.38-39.)  On appeal,
the Superior Court explained that "[a] judge should recuse himself 'whenever there is a
substantial doubt as to his ability to preside impartially.  The burden to show, prejudice,
however, is on the party seeking recusal.'"  (Resp't Exh. 44; ECF No. 26-14, p.11) (quoting
Commonwealth v. Lewis, 460 A.2d 1149, 1151-52 (Pa. Super. 1983)).  It agreed that Petitioner's
ineffective assistance of counsel claim was without merit, explaining as follows:

> At the PCRA hearing, Johnson did not question Attorney Williams regarding her
> reasons for not filing a motion to recuse.  See N.T. PCRA Hearing, 10/8/13, at 5-
> 21.  Beyond his blanket statement that Judge Sasinoski had a conflict of interest
> because he had let Jones out on bond, Johnson presented no evidence of bias,
> prejudice or unfairness.  As such, Johnson has failed to establish how he was
> prejudiced by counsel['s] failure to seek recusal.  See Commonwealth v. Jones,
> 811 A.2d 994, 1003 (Pa. 2002) (where defendant does not develop ineffectiveness
> claim in meaningful manner, it is insufficient to warrant relief).  Therefore,
> Johnson's claim of ineffectiveness must fail.  Pierce, supra.

(Resp't Exh. 44; ECF No. 26-14, pp.11-12.)

The United States Supreme Court's standard governing ineffective assistance of counsel
claims found in Strickland has already been explained in relation to claim one, supra, and, like
claim one, in order to obtain relief Petitioner must either show that the Superior Court's
adjudication of this claim was "contrary to" or involved an "unreasonable application of"
Strickland, see 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding" *see* 28 U.S.C. § 2254(d)(2).

In finding that Petitioner's ineffective assistance of counsel claim was without merit, the Superior Court cited to and applied <u>Pierce</u>, a standard that is not "contrary to" <u>Strickland</u>. *See* <u>Wertz</u>, 228 F.3d at 204. Its adjudication of the claim was also not an "unreasonable application of" <u>Strickland</u> given that Petitioner failed to present any evidence demonstrating that Judge Sasinoski had a basis to recuse himself and as such failed to demonstrate how he was prejudiced by his counsel's failure to move for Judge Sasinoski's recusal. Accordingly, the Superior Court's adjudication of this claim satisfies § 2254(d)(1), and it also satisfies § 2254(d)(2) because it was not based on an unreasonable determination of the facts. Thus, Petitioner is not entitled to habeas relief on this claim.

### 4.   Claim four:  Ineffective assistance of trial counsel for failing to subpoena Dale Jones.

In Petitioner's fourth claim, he argues that his trial counsel, Attorney Williams, was ineffective for failing to subpoena Dale Jones as a witness at trial who would have testified that Petitioner was not involved in the crimes. Petitioner raised this claim in his PCRA petition and in addressing it in its 1925(a) opinion, the PCRA court found as follows:

> Trial counsel, Ms. Williams, testified at an evidentiary hearing on 10/8/2013 in which she acknowledged the existence of potential witnesses Dale Jones, Jeffrey Davies, Jasmine Reeves and Ernest Tolliver. She acknowledged seeing discovery reported and that "a few of them were favorable" and that "some . . . didn't recognize the perpetrators, and they failed to identify Mr. Johnson as the perpetrator." (N.T. p. 6) No specifics were otherwise offered about which specific witness(es) would testify as such, nor were any particulars about the purported testimony offered by Ms. Williams. (N.T. Pp. 6-9) Trial counsel acknowledged the trial court directed the Commonwealth to make these witnesses available to be interviewed by the defense, and Ms. Williams testified that "Nobody really wanted to be interviewed. The people that showed didn't want to

talk. . .  They wouldn't talk to us.  There were no meaningful interviews or information gleaned about, you know – "  (N.T. p. 10)

Ms. Williams did not identify who she was referring to by name in her testimony.  Ms. Williams further testified that an alleged witness, Ernest Tolliver, was interviewed and a report was prepared for the co-defendant, Jaurvon Hopkins' attorney, William Brennan, Esquire.  The report alleged that Mr. Tolliver stated "the man put the victim in the car was definitely not Lester Johnson."  (N.T. p. 11)  Ms. Williams also testified that Mr. Tolliver stated "he was not eager to get involved."  (N.T. p. 12)  Ms. Williams confirmed that she wasn't certain when she received the "Tolliver" report but that it was prior to the defendant's trial.  (N.T. p. 13)  When asked directly whether she tried to secure Mr. Tolliver's appearance, she testified:

Q:      You couldn't locate him?  (N.T. p. 15)

A:      No, I asked him to find him and the defendant was insistent on finding him.  In the report, it said he had given Marshall Globicki his phone number, but he refused to give anybody his address.

She further testified:

Q:      So you didn't have an address for him?

A:      No, in the report he actually - - I kept questioning that.  And it is – the report said he wouldn't give an address . . .  (N.T. p. 16)

In order to establish that counsel was ineffective for failing to call witnesses, a petitioner must show that:  (1) the witnesses existed; (2) such witnesses were available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witnesses; (4) the witnesses were willing to testify for the defense; and (5) the absence of the testimony of such witnesses were so prejudicial as to have denied the petitioner a fair trial.  *See* Commonwealth v. Fletcher, 750 A.2d 261, 292 (Pa. 2000).  The prejudice prong requires that there be a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different.  Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999).

Based on Ms. Williams' testimony, the witnesses were neither available nor willing to testify for the defendant at trial.  Even Mr. Tolliver expressed a desire not to get involved and refused to provide the defense with an address.  In any event, it is not apparent, based on Ms. Williams testimony, that the outcome of the proceedings would have been different had these witnesses testified.  This claim is without merit.

(Resp't Exh. 41; ECF No. 26-11, pp.36-38) (internal footnote omitted).  On appeal, Petitioner focused his claim only on witness Dale Jones, but the Superior Court agreed that Petitioner's ineffective assistance of counsel claim did not merit relief because Petitioner did not establish that Dale Jones was willing to testify for the defense.  Specifically, it found that, in light of the testimony presented at the PCRA hearing, there was no indication that counsel's failure to call Dale Jones either prejudiced Petitioner or denied him a fair trial.  (Resp't Exh. 44; ECF No. 26-14, pp.12-13.)

Notably, Petitioner's PCRA petition was filed without defense counsel ever speaking to Dale Jones and the only evidence with regard to Dale Jones that was used to support Petitioner's claim was a report prepared by police following an interview with Dale Jones on June 20, 2006.  (Resp't Exh. 28; ECF No. 26-9, pp.31-32); *see also* (Resp't Exh. 29; ECF No. 26-10, pp.3, 5-7.)  The report indicates that Jones told police that he saw the events that occurred at the intersection of Lincoln and Lemington Avenues on July 25, 2004, but when asked whether he knew the identity of the two black males who were responsible, he responded "I can't say that it was [Petitioner] and [Jaurvon Hopkins]."  He was again asked if he could identify the actors and he again gave the reply, "I can't say that it was [Petitioner] and [Jaurvon Hopkins]."  (Resp't Exh. 29; ECF No. 26-10, pp.5-7.)  At the first PCRA hearing, Petitioner told the PCRA court, "I didn't even have my witnesses that didn't show up at my trial.  They are not here to testify today, and I just want some time to be able to locate them so they can be here to testify."  (PCRA-1, p.5.)  Then, during the second PCRA hearing, Attorney Coffey stated:

> What I would like is a little bit of time to contact Dale Jones if I could, find out where he is at, communicate with him, and speak with – either by letter or in person with Mr. Tolliver.  See if either of these two are willing to come to court. If they are not, we really don't have an issue.

(PCRA-2, p.38.)  The PCRA court agreed to keep the record open for the defense to contact Dale

Jones and Ernest Tolliver and scheduled a third PCRA hearing.  (PCRA-2, pp.39-40.)  However,

no further hearings occurred, and, on November 6, 2013, the PCRA court entered an order

denying relief on this claim.  In his December 30, 2013 Concise Statement of Matters

Complained of on Appeal, Attorney Coffey explained, "[a] third PCRA hearing had been

scheduled for 11/6/13 for the possible presentation of testimony from witnesses Ernest Tolliver

and Dale Jones, but was cancelled because witnesses Ernest Tolliver and Dale Jones never

responded to Undersigned Counsel's letters and telephone calls."  (Resp't Exh. 34; ECF No. 26-

11, p.13.)

Once again, in order to obtain relief on this ineffective assistance of counsel claim

Petitioner must either show that the Superior Court's adjudication of this claim was "contrary to"

or involved an "unreasonable application of" Strickland, see 28 U.S.C. § 2254(d)(1), or "resulted

in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding" see 28 U.S.C. § 2254(d)(2).  He has failed to

do either.

As noted by the PCRA court in its 1925(a) opinion, for this omission to constitute

ineffective assistance, Pennsylvania law requires that a petitioner establish:  (1) that the witness

existed; (2) that the witness was available to testify at trial; (3) that counsel was informed or

should have known of the existence of the witness; (4) that the witness was prepared to cooperate

and testify for the petitioner at trial; and (5) that the absence of the testimony prejudiced the

petitioner so as to deny him a fair trial.  Commonwealth v. Pursell, 724 A.2d 293, 306 (Pa. 1999)

(citing Commonwealth v. Crawley, 663 A.2d 676, 679 (Pa. 1995)); see also (Resp't Exh. 41;

ECF No. 26-11, p.38) (citing Commonwealth v. Fletcher, 750 A.2d 261, 292 (Pa. 2000)).  The

Superior Court also noted this standard in its opinion on appeal, *see* (Resp't Exh. 44; ECF No. 26-14, p.12) (citing <u>Commonwealth v. Clark</u>, 961 A.2d 80, 90 (Pa. 2008)), and the Pennsylvania standard with respect to this issue comports with federal law.  *See* <u>Williams</u>, 529 U.S. at 394-95; *see also* <u>U.S. ex rel. Green v. Rundle</u>, 434 F.2d 1112, 1115 (3d Cir. 1970) ("[w]hen a habeas corpus petitioner alleges as a ground for relief the failure of counsel to exercise normal competence in presenting specific trial evidence it is reasonable, we think, to put on petitioner the burden of showing that the missing evidence would be helpful.")

As both the PCRA court and the Superior Court explained, there was no evidence that Dale Jones, or any of the proposed witnesses for that matter, were ever willing or available to testify for the defense at Petitioner's trial.  Furthermore, there was no evidence that Dale Jones would have provided favorable testimony for Petitioner since Dale Jones did not affirmatively tell police that he knew the identity of the two black males involved in the kidnapping of the victims and that neither was Petitioner.  Under these circumstances, Petitioner cannot show that his trial counsel was ineffective for failing to subpoena Dale Jones, and therefore, the state court's adjudication of this claim was in accordance with <u>Strickland</u> and its progeny. Accordingly, Petitioner is not entitled to relief on this claim.

     **5.**  **<u>Claims five and six:  Ineffective assistance of trial counsel for failing to subpoena Ernest Tolliver and Ineffective assistance of trial counsel for failing to object to the reading of Charles Scott's preliminary hearing testimony into the record.</u>**

Much like claim four, in claim five, Petitioner argues that his trial counsel was ineffective for failing to subpoena Ernest Tolliver.  In claim six, Petitioner argues that his trial counsel was ineffective for failing to object to the reading of Charles Scott's preliminary hearing testimony

into the record at trial.  Neither of these claims, however, were exhausted in the state courts and they are subject to dismissal as procedurally defaulted.

To begin, "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); *see also* 28 U.S.C. § 2254(b)(1)(A).  Additionally, in order for this exhaustion requirement to be satisfied, a federal claim must be *fairly presented* to the state courts.  Castille v. Peoples, 489 U.S. 346, 351 (1989) (citing Picard v. Connor, 404 U.S. 270, 275 (1971)).  Fair presentation requires a petitioner to present "the federal claim's 'factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'"  Mathias v. Superintendent Frackville SCI, 876 F.3d 462, 479 (3d Cir. 2017) (quoting Robinson v. Beard, 762 F.3d 316, 328 (3d Cir. 2014)).  A petitioner who fails to properly present federal claims to a state court in a timely fashion under state law rules procedurally defaults those claims, O'Sullivan, 526 U.S. at 848, and a federal court may not review the defaulted claims unless the petitioner can demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law,"[5] or

---

[5] To show "cause," a petitioner must "show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court."  McCleskey v. Zant, 499 U.S. 467, 493 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  The Supreme Court has found such objective factors to include interference by officials that makes compliance with the State's procedural rule impracticable, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and ineffective assistance of counsel.  Id. (citing Murray, 477 U.S. at 486-88).  "Once the petitioner has established cause, he must 'show actual prejudice resulting from the errors of which he complains.'"  Id. at 494 (quoting United States v. Frady, 456 U.S. 152, 168 (1982) (internal quotations omitted)).  "Actual prejudice" means "not merely that the errors at [ ] trial created a *possibility* of prejudice, but that it worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Frady, 456 U.S. at 170 (emphasis in original).

25

"that failure to consider the claims will result in a fundamental miscarriage of justice."[6] Coleman v. Thompson, 501 U.S. 722, 750 (1991).

While Petitioner did challenge in his PCRA petition his trial counsel's failure to call Ernest Tolliver as a witness, he abandoned the claim on appeal to the Superior Court and only challenged counsel's failure to call Dale Jones.  Similarly, Petitioner challenged in his PCRA petition his trial counsel's failure to object to the reading of Charles Scott's preliminary hearing testimony into the record, but he abandoned this challenge on appeal, too.  Thus, neither claim was exhausted and both are now procedurally defaulted since Petitioner cannot go back and raise them before the Superior Court.  *See* Rolan v. Coleman, 680 F.3d 317 (3d Cir. 2012) ("Procedural default occurs when a claim has not been fairly presented to the state courts . . . and there is no additional state remedies available to pursue . . . or, when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule . . . .).  Petitioner has offered no explanation for why he abandoned these claims on appeal, and he cannot show that it was the result of counsel's ineffectiveness since he represented himself in his PCRA appeal and any procedural default was the result of his own hand.  Accordingly, they should be dismissed as procedurally defaulted.

---

[6] "The fundamental miscarriage of justice exception is narrow."  Coleman v. Greene, 845 F.3d 73 (3d Cir. 2017).  The "prototypical example" of a miscarriage of justice is a situation in which an underlying constitutional violation has led to the conviction of an innocent defendant.  Sawyer v. Whitley, 505 U.S. 333, 340 (1992).  In that instance, the merits of a petitioner's claims can be considered notwithstanding his or her failure to raise them before the state courts.  However, in order to avail himself or herself of this exception to the procedural default rule, a petitioner must make a substantial showing that he or she is actually innocent of the crime for which he or she is incarcerated.  Schlup v. Delo, 513 U.S. 298, 324 (1995).

### E.  Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  As provided for in 28 U.S.C. § 2253, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484.  Petitioner has not made the requisite showing in these circumstances.  Accordingly, a certificate of appealability should be denied.

## III.  CONCLUSION

For the aforementioned reasons, it is respectfully recommended that the Amended Petition for Writ of Habeas Corpus (ECF No. 25) be denied and that a certificate of appealability also be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and rule 72.D.2 of the Local Rules of Court, Petitioner is allowed fourteen (14) days from the date of

service of a copy of this Report and Recommendation to file objections.  Failure to file timely objections will constitute a waiver of any appellate rights.

Dated:  July 31, 2020.


/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge


Cc:    Lester Johnson
       JD-9865
       SCI Mahanoy
       301 Morea Road
       Frackville, PA  17932

       Counsel of record
       (Via CM/ECF electronic mail)