IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESTER JOHNSON, | ) |
| | ) Civil Action No. 17 – 1559 |
| Petitioner, | ) |
| | ) District Judge Robert J. Colville |
| v. | ) Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| SUPT. DELBASO and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, | ) ) ) |
| | ) |
| Respondents. | |

**OPINION ON REPORT AND RECOMMENDTION**

Currently pending before the Court is an Amended Petition for Writ of Habeas Corpus ("Petition") filed by Petitioner Lester Johnson ("Petitioner"). (ECF No. 25.) The Petition was referred to United States Magistrate Judge Lisa Pupo Lenihan in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule 72 of the Local Rules for Magistrate Judges. For the reasons that follow, the Report and Recommendation of the Magistrate Judge is adopted as the Opinion of the Court as supplemented by this Memorandum.

On July 31, 2020, Magistrate Judge Lisa Pupo Lenihan filed a Report and Recommendation wherein she recommended that the Petition be denied and that a certificate of appealability also be denied. (ECF No. 45.) After the Report and Recommendation was filed, Petitioner retained counsel who requested extensions of time to file objections. (ECF Nos. 49-54.) Timely objections were eventually filed on January 31, 2021. (ECF No. 55.)

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must now make a *de novo* determination of those portions of the Report and Recommendation to which objections were made. The Court

1

may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The Court may also recommit the matter to the magistrate judge with instructions.

First, the Court notes that Petitioner asserted the following six claims in his Petition:  (1) ineffective assistance of direct appeal counsel for failing to challenge the trial court's denial of his pretrial motion to suppress the photographic identifications of eyewitnesses Donna Peoples and Samuel Walter and for failing to challenge the in-court identifications of both witnesses at trial; (2) a violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (3) ineffective assistance of trial counsel for failing to move for the recusal of Judge Sasinoski; (4) ineffective assistance of trial counsel for failing to subpoena witness Dale Jones; (5) ineffective assistance of trial counsel for failing to subpoena witness Ernest Toliver; and (6) ineffective assistance of trial counsel for failing to object to the reading of Charles Scott's preliminary hearing testimony into the record at trial.  *See* ECF No. 45, pp.5-6.  The Magistrate Judge reviewed the first four claims on the merits and determined that Petitioner was not entitled to habeas relief.  *Id*., pp. 9-24.  She further determined that Petitioner's fifth and sixth claims were not entitled to habeas review because they were procedurally defaulted.  *Id*., pp. 24-26.

The majority of Petitioner's objections are not proper in that they do not clearly identify the specific portions of the Report and Recommendation to which he objects.  *See* LCvR 72(D)(2) (stating that "written objections . . . shall specifically identify the portions of the proposed, recommendations or report to which objection is made and the basis for such objections).  Instead, he sets forth numerous arguments under each of the following headings: (1) lack of physical evidence, (2) unreliable eyewitness testimony, (3) miscarriage of justice, and (4) ineffective assistance of trial counsel for failing to call witnesses.  *See* ECF No. 55.  Despite

2

the insufficiencies in the specificity of the objections, the Court will do its best to address all of Petitioner's arguments, albeit in a slightly different order, by considering their applicability on each claim raised in the Petition.[1]

## A. Petitioner's Claims

### 1. Claim one: Ineffective assistance of direct appeal counsel for failing to challenge the trial court's denial of his pretrial motion to suppress the photographic identifications of eyewitnesses Donna Peoples and Samuel Walter and for failing to challenge the in-court identifications of both witnesses at trial.

In claim one, Petitioner argued that his direct appeal counsel was ineffective for failing to challenge trial court's denial of his pretrial motion to suppress the photographic identifications of eyewitnesses Donna Peoples and Samuel Walter and was also ineffective for failing to challenge the in-court identifications of both witnesses at trial. *See* ECF No. 45, p.9. Specifically, Petitioner argued, as he did in his PCRA proceedings, that the photo array shown to both Peoples and Walter was unduly suggestive because Petitioner, who was described to police as a light-skinned African American male, was the only light-skinned African American male on the array. *Id*. While the Superior Court did agree that Petitioner's photograph in the array stood out more so than the others because he was the lightest complexioned of the group, the court found that the in-court identifications by both Peoples and Walter could still stand because, considering the totality of the circumstances, they had a sufficient indica of reliability and a basis independent from the photo array that supported their admission. *Id.*, pp.10-13. It thus concluded that Petitioner could not show that he was prejudiced by appellate counsel's failure to raise the issue

---

[1] To the extent Petitioner raises any new claims in his objections that were not included within his Petition, those claims are deemed waived and will not be considered by the Court. *See Kightlinger v. Pennsylvania*, No. 11-936, 2013 WL 4504382, at *2 (W.D. Pa. Aug. 22, 2013) (explaining that consideration of issues raised for the first time in an objection to a report and recommendation "would reduce the proceedings before the magistrate[] Judge to a mere dress rehearsal, which is contrary to the very reason for having magistrate judges").

3

on direct appeal. *Id*., p.13. The Magistrate Judge reviewed the claim on the merits and recommended that it be denied because the Superior Court's adjudication of it was neither contrary to nor an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), nor was it an unreasonable determination of the facts in light of the evidence presented. *Id.*, pp.14-16.

In his objections, Petitioner sets forth numerous legal and factual arguments for why he believes that the identifications of both Peoples and Walters should have been suppressed and presumably why direct appeal counsel was ineffective in failing to raise the claim on appeal. *See* ECF No. 55, pp. 2-6. In particular, he argues that all eyewitness testimony is inherently unreliable, and he also argues that because Peoples was never 100% sure about the identification of Petitioner, and the entirety of Walter's observations occurred while driving and looking through a side view mirror, they too were unreliable and should have been suppressed. *Id*. These objections, however, are not sufficient to undermine the Magistrate Judge's recommendation that this claim be denied and accordingly, are overruled. Specifically, the Superior Court noted that both witnesses were directly focused on the incident given how unusual it was, both had a clear view of Petitioner as he was trying to force the victim into the car in broad daylight and both identified the defendant within one to two days of the crime. *See* ECF No. 45, p.12. As such, the state court determined that there was an independent basis for their identifications apart from the photo array. *Id*., pp. 12-13. The state court additionally determined that both witnesses were extensively cross-examined about their respective identifications and the jury was free to credit or discredit their testimony. *Id*., p. 12. In fact, as correctly pointed out by Petitioner in his objections, the trial court even gave a jury instruction as it related to the identification testimony made by all the eyewitnesses and instructed the jury that

they should consider the identifications with caution if they found that the eyewitnesses could not clearly or did not have a good opportunity to see the defendant. *See* ECF No. 55, pp.4-5.

Despite Petitioner's arguments to the contrary, there is nothing in the record to suggest that he is entitled to habeas relief on this claim. Specifically, the alleged infirmities in the identifications of both Peoples and Walter as pointed out by Petitioner in his objections were considered by the Superior Court who still found that the totality of the circumstances indicated a sufficient indicia of reliability to support their in-court admission.[2] It thus concluded that Petitioner was not prejudiced by his direct appeal counsel's failure to challenge the identifications on appeal. The question in habeas is not whether direct appeal counsel should have challenged the identifications on appeal, nor is it whether the trial court should have granted the defense's pretrial motion to suppress the photo array identifications. In fact, the question in habeas is not even whether the Superior Court was right or wrong in determining that Petitioner was not prejudiced by his appellate counsel's failure to challenge the identifications on appeal. Instead, the question in habeas is whether the Superior Court's determination that direct appeal counsel was not ineffective for failing to do so was contrary to or an unreasonable application of *Strickland* or an unreasonable determination of the facts in light of the evidence presented. *See Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (noting the importance of defining the question before the habeas courts). The Court finds that it was not and therefore overrules Petitioner's objections as they pertain to the Magistrate Judge's recommended disposition of claim one.

---

[2] In reaching its conclusion, the Superior Court took into account that Peoples stated her identification was a "9" on a scale of 1 to 10 and that Walter saw the events through his driver's side mirror. *See* ECF No. 45, pp.10-11.

**2. Claim two:  Violation of Brady v. Maryland, 373 U.S. 83 (1963).**

In claim two, Petitioner argued that the Commonwealth committed a *Brady* violation by withholding exculpatory evidence in the form of a DEA investigative report, which he claimed implicated others in the murder of victim James Jones who was an informant for the DEA.  *See* ECF No. 45, p .16.  The Superior Court, relying on the PCRA court's opinion, found that there was no *Brady* violation because the purported DEA report, which was never authenticated or known to be in the possession of the Commonwealth, was "not exculpatory in the least" since it implicated both Petitioner and his co-defendant, Jaurvon Hopkins, in Jones' murder.  *Id*., pp.16-17.  The Magistrate Judge reviewed the claim on the merits and recommended that it be denied because the Superior Court's adjudication of it was neither contrary to nor an unreasonable application of *Brady*, nor was it an unreasonable determination of the facts in light of the evidence presented.  *Id*., p. 18.

In his objections, Petitioner conclusively states, without any evidence to support his position, that the DEA report was withheld from the defense by the Commonwealth, and he further states that, at a minimum, the report showed "that the universe of potential suspects is expanded where a cooperating witness places himself in such a position."  (ECF No. 55, p. 15.)  However, not only does Petitioner fail to establish that the purported DEA report was in the Commonwealth's possession, but, further, the report was not exculpatory because it clearly implicated Petitioner and his co-defendant in the victim's murder.  Therefore, the Court finds that the Superior Court's adjudication of this claim was neither contrary to nor an unreasonable application of *Brady*, nor was it an unreasonable determination of the facts in light of the evidence presented, because there was no reasonable probability that, even if it had been

disclosed, the result of Petitioner's trial would have been different. The Court thus finds that this objection does not undermine the Magistrate Judge's recommended disposition of claim two.

### 3. Claim three: Ineffective assistance of trial counsel for failing to move for the recusal of Judge Sasinoski.

In claim three, Petitioner argued that his trial counsel was ineffective for failing to move to recuse Judge Sasinoski because he "showed high favor towards victim James Jones in a hearing . . . only one month prior to his death[,] by removing him from house arrest . . . so Jones [could] work effectively as an informant for the D.E.A." (ECF No. 45, p.18.) He alleged that Judge Sasinoski's "prior history with victim Jones" demonstrated "leniency and favoritism" to Jones, and therefore one could infer that Judge Sasinoski harbored "ill-will" towards Petitioner who was charged with Jones' murder. *Id*., p.19. The Superior Court disagreed and concluded that Petitioner could not demonstrate prejudice by counsel's failure to seek recusal because there was no evidence of bias, prejudice or unfairness. *Id*. The Magistrate Judge reviewed the claim on the merits and recommended that it be denied because the Superior Court's adjudication of it was neither contrary to nor an unreasonable application of *Strickland*, nor was it an unreasonable determination of the facts in light of the evidence presented. *Id*., p.20.

In his objections, Petitioner merely states that as a result of Judge Sasinoski's release of the victim before his murder, a concern would be that Judge Sasinoski "would be affected by these events and inclined to see that the accused is convicted." (ECF No. 55, p.14.) Apart from a "concern" that Judge Sasinoski was somehow invested in the outcome of the trial given his minimal involvement that was purely judicial, and not personal, in nature, Petitioner fails to point to any specific, concrete evidence in the record that would have cast doubt on Judge Sasinoski's ability to preside impartially and that would have provided trial counsel with more

7

than a frivolous basis to seek his recusal. Therefore, Petitioner was not prejudiced by his trial counsel's failure to do so, and the Superior Court's adjudication of this claim was not contrary to or an unreasonable application of *Strickland*, nor was it an unreasonable determination of the facts in light of the evidence presented. The Court thus finds that this objection does not undermine the Magistrate Judge's recommended disposition of claim three.

### 4. Claim four: Ineffective assistance of trial counsel for failing to subpoena witness Dale Jones.

In claim four, Petitioner argued that his trial counsel was ineffective for failing to subpoena Dale Jones as a witness who Petitioner claims would have testified at trial that he was not involved in the crimes. *See* ECF No. 45, p.20. Petitioner raised this claim in his PCRA petition but testimony at the PCRA hearing by trial counsel established that Jones was neither available nor willing to testify for Petitioner at trial.[3] *Id.*, pp.20-21. On appeal, the Superior Court found that there was no indication that counsel's failure to call Jones either prejudiced Petitioner or denied him a fair trial because Petitioner had failed to establish that Jones was willing to testify for the defense. *Id.*, p.22. The Magistrate Judge reviewed the claim on the merits and recommended that it be denied because the Superior Court's adjudication of it was neither contrary to nor an unreasonable application of *Strickland*, nor was it an unreasonable determination of the facts in light of the evidence presented. *Id.*, pp.23-34.

In his objections, Petitioner argues that trial counsel could not provide a reasonable explanation for failing to subpoena Dale Jones since she knew he existed and could provide exculpatory testimony. *See* ECF No. 55, p.8. Specifically, Petitioner states that there was a

---

[3] In fact, Dale Jones never even responded to PCRA counsel's letters and phone calls to testify at Petitioner's PCRA hearing. *See* ECF No. 45, p.23.

police report indicating that Jones was an eyewitness to the crime and that Jones told police that Petitioner was not one of the perpetrators.[4]  *Id*.  Additionally, Petitioner states that, although it occurred after his trial, Dale Jones even testified at his co-defendant Hopkins' trial and testified that neither Hopkins nor Petitioner were one of the men involved with the incident that occurred at Lincoln and Lemington Avenues on July 25, 2004.[5]  *Id.*, pp.8-9.  Petitioner, however, ignores the fact that in order to show that his trial counsel was ineffective for failing to call Dale Jones as a witness, he had to first show that he was available and willing to testify at his trial, neither of which he demonstrated to the state courts in his PCRA proceedings.  Accordingly, the Superior Court's finding that counsel was not ineffective cannot be said to be contrary to or an unreasonable application of *Strickland*, nor can it be said that it was an unreasonable determination of the facts in light of the evidence presented, and the Court thus finds that Petitioner's objections must be overruled.

5. **Claims five and six:  Ineffective assistance of trial counsel for failing to subpoena witness Ernest Toliver and ineffective assistance of trial counsel for failing to object to the reading of Charles Scott's preliminary hearing testimony into the record at trial.**

---

[4] Petitioner misrepresents the contents of the police report.  In actuality the report indicates that Jones was twice asked whether he knew the identity of the two black males who were responsible, and he twice responded by saying "I can't say that it was [Petitioner] and [Jaurvon Hopkins]."  (ECF No. 45, p.22.)

[5] The Court notes that the jury must not have found Dale Jones' testimony credible because Hopkins was also convicted for the role he played in the kidnapping and homicides of the victims.  *See Commonwealth v. Hopkins*, CP-02-CR-10644-2004, CP-02-CR-12416-2004, CP-02-CR-16615-2004, and CP-02-CR-16617-2004 (Allegheny Cty. Ct. of Comm. Pleas).  Furthermore, the Court notes that when Dale Jones was asked at Hopkins' trial, "Are you telling this jury that the first shot that you saw that both of these men had their hands on the gun at the same time, right?" Jones responded, "I couldn't tell.  I know Lester [Johnson], I mean, I know the gun, the guy had the gun, he had his arm, they were wrestling."  (ECF No. 55-1, p.65.)  When Dale Jones was later asked about this slip of the tongue, he stated that he was confused about the question and that "it wasn't Lester Johnson".  (ECF No. 55, pp.107-08.)

In claim five, Petitioner argued that his trial counsel was ineffective for failing to subpoena Ernest Tolliver. *See* ECF No. 45, p.24. In claim six, Petitioner argued that his trial counsel was ineffective for failing to object to the reading of Charles Scott's preliminary hearing testimony into the record at trial. *Id.* The Magistrate Judge found that both of these claims were procedurally defaulted because neither had been properly exhausted in the state courts as a result of Petitioner's own hand. *Id.*, pp.24-26.

In his objections, Petitioner argues applicability of the miscarriage of justice exception to the procedural default doctrine. *See* ECF No. 55, pp.6-7. In this regard, federal courts may not consider procedurally defaulted claims unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime, *McCleskey v. Zant*, 499 U.S. 467, 494 (1991), by presenting new, reliable evidence of innocence. *Schlup v. Delo*, 513 U.S. 298, 316 (1995). In *Schlup*, the Supreme Court adopted a specific rule for habeas petitioners asserting innocence as a gateway to defaulted claims and held that these prisoners must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. To be credible, the Supreme Court has stated that a gateway claim of innocence requires "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id.* at 324. The *Schlup* standard is "demanding and permits review only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal

quotation omitted).  Finally, "actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner argues in his objections that he has demonstrated a strong case of actual innocence showing a miscarriage of justice: "(1) where there is no physical evidence to connect Petitioner to this crime [and] where there is unreliable identification testimony, (2) where there are two-eyewitnesses – who would have testified at Petitioner's trial that he was not one of the perpetrators – [who] were not called, (3) where the court denied appointment of an expert on faulty eyewitness testimony and (4) where a solid alibi was not properly investigated and presented by defense counsel." (ECF No. 55, pp.11-12.)  Since the first and third arguments do not relate to factual innocence, but instead challenge the sufficiency and/or weight of the evidence that was presented at trial, they do not support a showing of actual innocence in the applicability of the miscarriage of justice exception.  With respect to Petitioner's second argument, he refers to eyewitnesses Dale Jones and Ernest Tolliver who he claims would have provided exculpatory testimony for him at trial, but defense counsel failed to subpoena them.  With respect to his fourth argument, he refers to Michael Snowden who he claims would have provided him with an alibi, but defense counsel also failed to subpoena him.  The Court will briefly address each of these arguments in relation to Petitioner's claim of innocence to overcome the procedural default of claims five and six.

The evidence with respect to eyewitness Dale Jones has already been set forth by the Court in connection with claim four, *supra*, and will not be recounted.  With respect to Ernest Tolliver, however, it was alleged by Petitioner in his amended PCRA petition that when Tolliver was interviewed by the private investigator for Hopkins' attorney, he stated that the perpetrators of the crimes were not Petitioner or Hopkins.  *See* ECF No. 26-9, pp.31-32.  Both Jones and

Tolliver testified for Hopkins at his trial that was held on November 5-10, 2010, and both testified that neither Petitioner nor Hopkins were the two men involved in the crimes that they witnessed on the corner of Lemington and Lincoln Avenues. *See* ECF No. 55-1. Despite this testimony, however, Hopkins was convicted for his involvement in the crimes. *See* FN 5.

The Supreme Court has instructed that when considering whether it is more likely than not that no reasonable juror would convict the petitioner the court "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks and citation omitted). In weighing the evidence, "[t]he court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id*. As part of the reliability assessment of the evidence, the court "may consider how the timing of [the petitioner's] submission and the likely credibility of the [witnesses] bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332.

When considering the impact of the purported testimony of Dale Jones and Ernest Tolliver in the context of all the other evidence that was presented at Petitioner's trial the Court simply cannot find that this is one of the "rare" and "extraordinary" cases where the gateway actual innocence standard has been satisfied. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (noting that "tenable actual-innocence gateway pleas are rare"); *House*, 547 U.S. at 538 (emphasizing that the *Schlup* standard is "demanding" and seldom met). First, the Court notes that Petitioner has failed to produce even an affidavit from either Jones or Tolliver stating that they were available to testify and would have testified that Petitioner was not the perpetrator of the crime that they allegedly witnessed on July 25, 2004. However, even assuming that both

12

would have testified as they did in Hopkins' trial, that neither Petitioner nor Hopkins were the perpetrators of the crime that they witnessed on July 25, 2004, the Court notes that both individuals had a personal relationship with Petitioner and the jury would have had to take this fact into consideration when weighing their credibility against the other eyewitnesses, some of whom had no such relationship to Petitioner or the victims yet positively identified Petitioner as the perpetrator.  In fact, this is exactly what occurred when Jones and Tolliver testified in Hopkins' trial, but the jury chose to discredit their testimony and ultimately convict Hopkins for his role in the crimes.  Taking into account the reliability of the purported testimony of Jones and Tolliver, and considering it in light of all the other evidence that was adduced at Petitioner's trial, the Court cannot conclude that it is more likely than not that no reasonable juror would have convicted Petitioner had they testified.  Accordingly, with respect to Jones and Tolliver, Petitioner has not satisfied the miscarriage of justice exception to excuse the procedural default of claims five and six.

With respect to his alleged alibi, Michael Snowden, Petitioner argues, as he did in his amended PCRA petition, that Snowden could have provided alibi evidence to establish that he could not have committed the crimes for which he was convicted.  *See* ECF No. 26-9, pp.30-31. Specifically, Snowden provided Petitioner with an affidavit in January 2013 and he subsequently testified at Petitioner's PCRA hearing on September 10, 2013.  According to Snowden, homicide detective William Fisher interviewed him within a week after the homicides that occurred on July 25, 2004, and he asked him whether he knew of Petitioner and his co-defendant Hopkins. Snowden told him that he did not and that he only knew of them because they were from the same neighborhood.  Detective Fisher then told Snowden that Petitioner had told him that he was with Snowden during the time of the murders, but Snowden told Fisher that Petitioner was not

13

with him.  At the PCRA hearing, Snowden testified that he lied to Detective Fisher when he questioned him in 2004 and that the truth was that Petitioner and his girlfriend were with him at his house from about 1:00pm until 11:00pm or 12:00am on July 25, 2004.  When asked why Snowden lied to Detective Fisher, Snowden testified that Detective Fisher told him that if he said he was with Petitioner during the time of the murders then he too would be charged with homicide.  Snowden also testified that Detective Fisher later told him after seeing him in court that Fisher would help him with his drug charges if he would agree to not testify for Petitioner.  Despite having admitted to being scared by Detective Fisher and his threat to charge him with homicide if he admitted that he was with Petitioner or his co-defendant on July 25, 2004, Snowden testified that he tried to come forward with this information back at the time of Petitioner's trial but was unable to contact Petitioner's attorney.

Detective Fisher also testified at Petitioner's PCRA hearing on September 10, 2013. Fisher testified that he and his partner Detective Joseph Meyers went to speak to Snowden after Petitioner provided his name as an alibi.  Snowden told the detectives that he was not with Petitioner and did not speak to him on the day of the murders.  Detective Fisher denied having threatened Snowden with criminal charges if he refused to cooperate, denied ever telling Snowden that they believed he had involvement in the murders, and denied telling Snowden that he would help him out with his criminal charges if he refused to go to court for Petitioner.  He did, however, admit to not knowing whether Snowden had any criminal charges pending against him at that time but testified that he did not believe that he said anything to Snowden about working with him to help him out with those charges because Snowden did not have information that was helpful to the investigation.  Without discussion, the PCRA court dismissed Petitioner's

claim regarding Snowden as meritless and Petitioner did not pursue the claim any further on appeal.

The long established rule in federal habeas proceedings is that where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000); *see also Townsend v. Sain*, 372 U.S. 293, 314 (1963) ("if no express findings of fact have been made by the state court, the District Court must initially determine whether the state court has impliedly found material facts."), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1963). In habeas proceedings, "federal courts owe the same deference to implicit state court factual findings as they afford to explicit state court factual findings." *Lark v. Secretary Pennsylvania Dept. of Corrections*, 645 F.3d 596, 610 (3d Cir. 2011). This rule of deference also includes implicit credibility determinations made by state courts. *See Campbell*, 209 F.3d at 290 (stating that federal habeas courts are bound by the state courts implicit resolution of credibility disputes even though the state court did not make its findings of fact explicit.) And, pursuant to 28 U.S.C. § 2254(e)(1), a habeas petitioner can only overcome this deference and presumption of correctness afforded to state court factual determinations by "clear and convincing evidence."

Since the PCRA court here found that Petitioner's alibi claim regarding Snowden was meritless, the logical presumption is that the PCRA court rejected Snowden's testimony as not credible. This implicit credibility determination must be deferred to by this Court just as an explicit credibility determination, and, as noted above, Petitioner cannot overcome the deference owed to such determination except by clear and convincing evidence. Petitioner, however, has

15

not met this burden since he has not presented any additional evidence that he was with Snowden at the time of the murders apart from what was already considered and found not convincing by the PCRA court. Thus, the Court must defer to the PCRA court's finding that the evidence concerning Snowden was not credible, and, as such, Petitioner cannot overcome the procedural default of claims five and six based on the miscarriage of justice exception.

Next, it appears that Petitioner tries to overcome the procedural default of claims five and six by invoking *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and arguing that the default should be excused due to his PCRA counsel's ineffectiveness in failing to subpoena and/or call Dale Jones and Ernest Tolliver as witnesses at his PCRA hearing and also for failing to introduce at Petitioner's PCRA hearing the transcripts of Hopkins' trial, which contained the testimony of Jones and Tolliver. *See* ECF No. 55, pp.10, 12-14. In this context, however, *Martinez* is inapplicable. Specifically, in *Martinez* the Supreme Court held that "[i]neffective assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's default of a claim of ineffective assistance at trial." *Id*. at 1315. However, as noted by the Magistrate Judge in her Report and Recommendation, the default of claims five and six did not occur as a result of PCRA counsel's ineffectiveness since both claims five and six were actually raised by counsel in the amended PCRA petition. *See* ECF No. 45, p.26. Instead, it was Petitioner, while acting *pro se*, who chose to abandon the claims and not pursue them on appeal. *Id.* As stated in the Report and Recommendation, "any procedural default was the result of [Petitioner's] own hand[,]" *id*., and in this regard *Martinez* does not apply.

Despite Petitioner's failure to put forth a meritorious objection to overcome the default of claims five and six, the Court finds in the alternative that neither claim warrants Petitioner with habeas relief since he has not demonstrated the ineffectiveness of his counsel in either situation.

16

With respect to claim five and his trial counsel's failing to locate and subpoena Ernest Tolliver, when a petitioner contends that trial counsel was ineffective because he failed to locate or call a witness, the petitioner must, at a minimum, show that the witness was available at the time of trial. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991) (habeas petitioner must present at least some evidence that witness was available). To make this showing, a petitioner must do more than make "vague and conclusory allegations" in his habeas petition that the witness was available. *Id*. Here, while there is evidence that trial counsel knew of the existence of Tolliver prior to Petitioner's trial, and evidence that trial counsel knew that Tolliver's testimony would have been favorable, there is no evidence that Tolliver was available at the time of trial and was prepared to cooperate and testify on Petitioner's behalf. Indeed, the testimony that was introduced at Petitioner's PCRA hearing actually demonstrates otherwise. According to trial counsel, she did prepare a subpoena for Tolliver, but it was not served since Tolliver refused to give the private investigator his address and he therefore could not be located.[6] A witness cannot be produced out of a hat and Petitioner cannot meet his burden to show that trial counsel made errors so serious that her representation fell below the objective standard of reasonableness simply by asserting that she should have done more to locate Tolliver. Indeed, Petitioner himself has not even produced an affidavit from Tolliver stating that

---

[6] Trial counsel also testified that she repeatedly asked the Commonwealth for the contact information of numerous potential witnesses after her private investigator had difficulty obtaining it, but her requests were denied out of concern for witness safety. The trial court instructed the Commonwealth to make the witnesses available to the defense for interview at the courthouse but only a couple of people showed up and nobody wanted to be interviewed. They were also told by the prosecutor that they did not have to talk to defense counsel. It is unclear from the PCRA hearing transcript whether Tolliver was part of that group of witnesses, but what is clear is that trial counsel was not able to serve Tolliver with a subpoena since he refused to provide the private investigator with his address when he was interviewed.

he was willing to cooperate with Petitioner's defense team, provide his contact information for a subpoena and make himself available to testify on behalf of Petitioner at his trial. Accordingly, Petitioner cannot demonstrate that his counsel was ineffective. Furthermore, even if counsel had been successful at subpoenaing Tolliver, it is not readily clear that Tolliver's testimony would have altered the outcome of the trial for Petitioner since Tolliver, like Dale Jones, testified at Hopkin's trial and his testimony was discredited by the jury who still voted to convict Hopkins. Taking into account all the evidence introduced at Petitioner's trial, including the testimony of the other eyewitnesses who positively identified Petitioner as the perpetrator, one of whom even personally knew Petitioner, Petitioner has not demonstrated that there is a reasonable probability that he would have been acquitted had Tolliver testified. As such, this claim would not merit Petitioner habeas relief even if it were not procedurally defaulted.

With respect to claim six, Petitioner argues that counsel should have objected to the introduction of Charles Scott's preliminary hearing testimony into the record at trial[7] because Petitioner did not have a full and fair opportunity to cross-examine Scott at the preliminary hearing due to the fact that he was not provided with all impeachment evidence regarding Scott until after Scott died.[8] Under Pennsylvania law, an unavailable witness' prior recorded testimony is admissible at trial, and will not offend the right to confrontation where admission of that prior testimony is being sought as substantive evidence against the accused, provided that the defendant had a "full and fair opportunity" to cross-examine that witness at the prior

---

[7] It is crucial to point out that trial counsel did object but the basis of her objection is not clear from the trial transcript. *See* N.T. 2 at 259 (trial counsel objecting based on "what's already been raised").

[8] Scott was placed into a witness protection program after the crime occurred but died before Petitioner's trial. At trial, the Commonwealth introduced Scott's preliminary hearing testimony.

proceeding. *Commonwealth v. Bazemore*, 614 A.2d 684, 687 (Pa. 1992). The crux of Petitioner's argument is that counsel should have objected to the introduction of Scott's preliminary hearing testimony because Petitioner did not have a "full and fair opportunity" to cross-examine Scott at that hearing with evidence that would have cast doubt on his credibility. Such evidence included the fact that Scott and his girlfriend were placed into witness protection where all their living expenses were provided for by the Commonwealth with Scott having received $12,227 in witness protection benefits, including cash, drug rehabilitation, travel and housing. *See* ECF No. 26-9, p.28. It also included the fact that at the time of the shootings Scott disliked Petitioner and was a drug addict who was facing possible violations of his probation due to drug use. *Id.*, 29.

However, the evidence, about which Petitioner complains he did not get to cross-examine Scott during his preliminary hearing, was actually introduced by defense counsel at trial through other witnesses. For example, Brian Jones testified that Scott disliked Petitioner. Sakeria Coffey, Scott's sister, testified that Scott admitted he lied about Petitioner, that Scott was a drug addict on probation at the time and that he was given money for testifying. Sergeant Lavonnie Bickerstaff testified about Scott's involvement in the witness protection program and the financial benefits he received. Finally, Robert O'Brien from the probation office testified about his supervision of Scott and prior drug charge. Given the introduction of this evidence, which sufficiently cast doubt on Scott's credibility, it cannot be said that Petitioner was deprived of a full and fair opportunity to cross-examine Scott, and, therefore, not only was counsel not ineffective because she did actually object to the introduction of Scott's preliminary hearing testimony, but she was also not ineffective because there was no basis upon which to rule the

testimony inadmissible. Accordingly, this claim would also not merit Petitioner habeas relief even if it were not procedurally defaulted. Petitioners objections are overruled.

### Conclusion

For these reasons, the Report and Recommendation will be adopted as the Opinion of the Court, subject to the Court's additional supplementation concerning Petitioner's objections herein. A separate Order will be entered.

Dated: February 16, 2021.

By the Court:

/s/ *Robert J. Colville*
Robert J. Colville
United States District Judge

Cc: Counsel of record
(Via CM/ECF electronic mail)